Ronald MAYES, Appellant–Petitioner,

v.

**SECOND INJURY FUND,**
Appellee–Respondent.

No. 93A02–0702–EX–162.

Court of Appeals of Indiana.

Sept. 11, 2007.

Randal M. Klezmer, Klezmer and Associates, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION.

BAKER, Chief Judge.

Appellant-petitioner Ronald Mayes appeals the Indiana Worker's Compensation Board's (the Board) denial of his petition for payment from Indiana's Second Injury Fund [1] (the Second Injury Fund). Specifically, Mayes argues that the Board erred by denying him compensation from the Second Injury Fund because he met the requirements for compensation and that his settlement with a third-party tortfeasor does not bar his recovery as a matter of law. Concluding that Mayes has failed to prove that he is entitled to compensation from the Second Injury Fund, we affirm the Board's decision.

### FACTS

On November 10, 1999, Mayes was injured in an accident arising in the course of his employment with Main Tech Corporation (Main Tech). The accident involved Mayes's upper extremities and resulted in his undisputed permanent and total disability.

The Board conducted a hearing on March 29, 2000, and Mayes subsequently began receiving compensation from Main Tech's insurance carrier, Reliance Insurance Company (Reliance). When Reliance became insolvent, Mayes sought and received compensation from the Indiana Guaranty Fund (Guaranty Fund). The Guaranty Fund awarded Mayes the $100,000 statutory maximum. Thereafter, Mayes received further compensation from Main Tech until it filed for bankruptcy on October 18, 2004.

Mayes and Main Tech believed that a third-party tortfeasor was legally liable for Mayes's injuries. Consequently, in 2000, Mayes filed an action in the Southern District of Indiana against the Federal Express Corporation, Davco Corporation, SSOE Inc., and DW Nicholson Corporation (collectively, Federal Express).[2]

On November 17, 2003, Mayes and Main Tech entered into an agreed statement of facts, which the Board approved on December 5, 2003. The statement of facts provided that Mayes and Federal Express had settled the third-party case for an undisclosed amount of money.[3] Main Tech and Reliance consented to the settlement and, as a condition of the settlement, Main Tech agreed to "continue to pay all statutory worker's compensation benefits pursuant to Indiana's Worker's Compensation law." Appellant's App. p. 20.

On November 15, 2004, Mayes filed a petition for entry into the Second Injury Fund. On July 25, 2006, a single member of the Board issued a decision, which provided, in pertinent part:

[Mayes] has received total compensation for his injury that equals Two–Hundred

---

**1.** Ind.Code § 22–3–3–13.

**2.** The action was filed under cause number IP00–1160–CH/G.

**3.** The settlement remains confidential and is not part of the record.

Sixty–Four weeks (264) of disability payments.

It is further found that [Mayes] is permanently [and] totally disabled from causes and conditions of which there are now and have been objective symptoms and conditions proven that are not within the physical or mental control of [Mayes] himself and that he is unable to support himself at any gainful employment, not associated with rehabilitative or vocational therapy.

It is further found that for the purposes of Ind.Code § 22–3–3–13[ (h) ] that the insurance carrier and the employer are both considered by the Second Injury Fund to be responsible to pay such maximum benefit as is required for entry into the fund. It is further found that [Mayes] has not exhausted his maximum benefit found in I.C. 22–3–3–13[ (h) ], but that he has exhausted all of his remedies available against [Reliance]. Any further action on behalf of [Mayes] would thereby be futile and the [Board] finds that equity demands that under the circumstances [Mayes] should be found to have exhausted his maximum benefit under I.C. 22–3–3–13[ (h) ].

It is further found that although [Mayes] is deemed to be permanently and totally disabled and has exhausted his maximum benefit under I.C. 22–3–3–13[ (h) ], *he is still barred from entry into the Second Injury Fund because of his acceptance of a third party settlement with Federal Express Corporation in 2000.* This settlement [ ] under Ind. Code § 22–3–2–13 would have alleviated [Main Tech] from paying any further compensation and therefore alleviates the Second Injury Fund. The fact that [Main Tech] voluntarily agreed to continue paying [Mayes] is outside the purview of the Indiana Worker's Compensation Act.

* * *

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the [Board] that [Mayes] shall take nothing by way of his application to the Second Injury Fund.

Appellant's App. p. 7–8 (emphasis added). On February 1, 2007, the Board entered an order affirming the decision of the single member by a vote of four to three. Mayes now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ The Worker's Compensation Act (WCA) provides "compensation for personal injury or death by accident arising out of and in the course of employment." Ind. Code § 22–3–2–2. The WCA "should be liberally construed to effectuate its humane purposes; consequently, it should be construed in favor of employees and beneficiaries." *Bowles v. Griffin Indus.,* 855 N.E.2d 315, 320 (Ind.Ct.App.2006), *trans. denied.*

■ In reviewing a worker's compensation decision, we are bound by the Board's findings of fact and may not disturb its determination unless the evidence is undisputed and leads undeniably to a contrary conclusion. *Mueller v. Daimler-Chrysler Motors Corp.,* 842 N.E.2d 845, 848 (Ind.Ct.App.2006). It is the duty of the Board, as the trier of fact, to make findings that reveal its analysis of the evidence and that are specific enough to permit intelligent review of its decision. *Id.* In evaluating the Board's decision, we employ a two-tiered standard of review. First, *we review the record to determine if there is any competent evidence of probative value to support the Board's findings.* We then examine the findings to see if

they are sufficient to support the decision. *Shultz Timber v. Morrison*, 751 N.E.2d 834, 836 (Ind.Ct.App.2001). We will not reweigh the evidence or assess witness credibility, and we will consider only the evidence most favorable to the award, including any and all reasonable inferences flowing therefrom. *Id.* We will reverse a decision if the Board incorrectly interprets the WCA. *Mueller*, 842 N.E.2d at 848.

## II. Second Injury Fund

■ Our legislature codified the Second Injury Fund at Indiana Code section 22–3–3–13. "One of the purposes of the Second Injury Fund is to provide monetary benefits to employees who are permanently and totally disabled and have received the maximum compensation they are entitled to under the [WCA]." *Bowles v. Second Injury Fund*, 827 N.E.2d 142, 147–48 (Ind.Ct.App.2005), *trans. denied.* The relevant subsections of the Second Injury Fund statute provide: [4]

> (h) If an employee who is entitled to compensation under IC 22–3–2 through IC 22–3–6 either:
>
> (1) exhausts the maximum benefits under section 22 of this chapter without having received the full amount of award granted to the employee under section 10 of this chapter; or
>
> (2) exhausts the employee's benefits under section 10 of this chapter; then such employee may apply to the [B]oard, who may award the employee compensation from the second injury fund established by this section, as follows under subsection (i).

> (i) An employee who has exhausted the employee's maximum benefits under section 10 of this chapter may be awarded additional compensation equal to sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wage at the time of the employee's injury, not to exceed the maximum then applicable under section 22 of this chapter, for a period of not to exceed one hundred fifty (150) weeks upon competent evidence sufficient to establish:
>
> (1) that the employee is totally and permanently disabled from causes and conditions of which there are or have been objective conditions and symptoms proven that are not within the physical or mental control of the employee; and
>
> (2) that the employee is unable to support the employee in any gainful employment, not associated with rehabilitative or vocational therapy.

I.C. § 22–3–3–13. The burden is on the petitioner to prove that he is entitled to compensation from the Second Injury Fund. *Burton v. Gen. Motors Corp.*, 172 Ind.App. 263, 267, 360 N.E.2d 36, 39 (1977).

## III. Third–Party Settlements

■ The parties disagree over the impact of Indiana Code section 22–3–2–13 on Mayes's petition for compensation from the Second Injury Fund. Indiana Code section 22–3–2–13 provides, in relevant part:

> [Paragraph 1 [5]] Whenever an injury or death, for which compensation is pay-

---

**4.** In 2006, the legislature amended Indiana Code section 22–3–3–13 by inserting subsection (d) and redesignating subsections (d) through (j) as subsections (e) through (k), respectively. While the 2006 amendments did not substantively affect the subsections we review today, they did redesignate subsections (g) and (h) as subsections (h) and (i). Al-

though the Board and the parties refer to the subsections by their previous designations, we will refer to the subsections as they are designated in the current statute-subsections (h) and (i).

**5.** Indiana Code section 22–3–2–13 contains nine unnumbered paragraphs. Following the lead of our Supreme Court in *DePuy, Inc., v.*

able under chapters 2 through 6 of this article shall have been sustained *under circumstances creating in some other person than the employer and not in the same employ a legal liability to pay damages* in respect thereto, the injured employee, or his dependents, in case of death, may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article. *In that case, however, if the action against the other person is brought by the injured employee or his dependents and judgment is obtained and paid, and accepted or settlement is made with the other person, either with or without suit, . . . the liability of the employer or the employer's compensation insurance carrier to pay further compensation or other expenses shall thereupon terminate . . . .*

\* \* \*

[Paragraph 9] No release or settlement of claim for damages by reason of injury or death, and no satisfaction of judgment in the proceedings, shall be valid without the written consent of both employer or the employer's compensation insurance carrier and employee or his dependents, except in the case of the employer or the employer's compensation insurance carrier, consent shall not be required where the employer or the employer's compensation insurance carrier has been fully indemnified or protected by court order.

(Emphases added). Indiana Code section 22–3–2–13 "prevents double recovery" and leads to the "equitable result demanded by

*Farmer,* 847 N.E.2d 160, 166 (Ind.2006), we have numbered the paragraphs for the sake of

common law subrogation." *DePuy,* 847 N.E.2d at 171.

Mayes argues that he is entitled to compensation from the Second Injury Fund in spite of his third-party settlement with Federal Express. Specifically, he argues that the language of section 22–3–2–13 is "not ambiguous. It clearly states that the liability that terminates . . . is that of the 'employer or the employer's compensation insurance carrier.' The liability of the Second Injury Fund does not terminate." Appellant's Br. p. 9.

While the Second Injury Fund agrees that Mayes is an "otherwise eligible person[,]" appellee's br. p. 4, it argues that the third-party settlement terminated Main Tech and Reliance's liability and, therefore, Mayes is not entitled to compensation from the Second Injury Fund. The Second Injury Fund further argues that because section 22–3–2–13 applies to "compensation which is payable under chapters 2 through 6 of this article" and the Second Injury Fund is created in chapter 3 of the article, Mayes's third-party settlement precludes additional compensation from the Second Injury Fund.

Our Supreme Court recently summarized the portion of section 22–3–2–13 terminating employer and insurer liability:

Paragraph 1 includes an explicit obligation of the employee to reimburse the employer in the event of a settlement with a third party[.] . . . In *Norris v. United States Fidelity and Guaranty Co.,* 436 N.E.2d 1191, 1194 (Ind.Ct.App. 1982), this right of the employer was held to be a lien, not a subrogation right, and therefore not subject to proration between amounts also covered by worker's compensation and those that are

clarity.

not. This right of the employer is, however, subject to the employer's reimbursing the employee for its "pro-rata share of the reasonable and necessary costs and expenses of asserting the third party claim." I.C. § 22–3–2–13 (paragraph 1).

\* \* \*

The third party tortfeasor cases all turn on the specific language of section 13, in particular the "further compensation . . . shall thereupon terminate" language of paragraph 1. They did not address the effect of paragraph 9 of section 13, which states, with exceptions not relevant here, "[n]o release or settlement of claim for damages . . . shall be valid without the written consent" of the employer.

"[I]t is well-established that a judicial interpretation of a statute, particularly by the Indiana Supreme Court, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation." *Fraley v. Minger*, 829 N.E.2d 476, 492 (Ind.2005). The general rule that a third party settlement bars worker's compensation benefits has been recited in these other settlement contexts. We assume without deciding that [the employer in this case] is correct in claiming that this rule, announced over thirty years ago as a matter of statutory interpretation, remains the law as to claims against third parties. Whether that rule applies where the settlement is obtained before a worker's compensation award has been resolved, and is in an amount less than the anticipated worker's compensation benefit is an open question that we need not resolve here.[FN4]

FN4. Recently, the Court of Appeals has backed away from the strict bar to worker's compensation after an injured employee has received some money from a third party. In *Ansert Mechanical Contractors, Inc. v. Ansert*, 690 N.E.2d 305 (Ind.Ct.App.1997), *trans. denied*, an injured employee was offered $100,000 from a third party tortfeasor's insurance company. In an attempt to preserve its statutory subrogation right, the employer's worker's compensation insurance carrier collected that sum from the third party's liability insurer and then advanced the injured employee $100,000. The employee did not release his claim against the third party tortfeasor and did not enter into a written settlement agreement. The employer argued that this transaction constituted a "settlement" between the injured employee and the third party, and therefore the employee was barred from pursuing worker's compensation against the employer. The Court of Appeals disagreed: "the apparent purpose behind the termination provision of section thirteen is to prevent injured employees from settling with a third party, thereby cutting off the opportunity of a worker's compensation carrier to pursue the liable party to recover any benefits it has paid." *Id.* at 307. Because the employee was still pursuing a claim against the third party tortfeasor, and his acceptance of the $100,000 from the third party's liability insurer did not preclude the employer's worker's compensation insurance carrier from pursuing the third party tortfeasor in recovering any worker's compensation benefits paid to the employee, the Court of Appeals held that section 13 did not bar the employee from recovering worker's compensation benefits. *Id.*

In *Calvary Temple Church, Inc. v. Paino*, 555 N.E.2d 190 (Ind.Ct.App. 1990), the Worker's Compensation Board found no "final settlement agreement" had been reached between an injured employee and a third party where the employer and its carrier had not signed an agreement between the employee and third party in settlement of a civil suit. The carrier was therefore liable for future compensation benefits. The Court of Appeals noted that the Board was "technically correct," but found it unnecessary to rule on this issue. *Id.* at 193. Because the pay-

ment received from the third party was greater than the worker's compensation previously awarded, the Board ordered the employee to reimburse the carrier, less the carrier's pro rata share of attorney's fees. *Id.* at 194.

*DePuy,* 847 N.E.2d at 166–68 (some internal citations omitted).

 The effect of a third-party settlement on an employee's petition for compensation from the Second Injury Fund is an issue of first impression. However, as previously noted, the burden is on Mayes to prove that he is entitled to compensation for the Second Injury Fund. *Burton,* 360 N.E.2d at 39. An employee who successfully petitions for compensation from the Second Injury Fund is not entitled to unlimited compensation; instead, the employee "may be awarded additional compensation equal to sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wage at the time of the employee's injury . . . .for a period of not to exceed one hundred fifty (150) weeks." I.C. § 22–3–3–13(i). And, as our Supreme Court recognized in *DePuy,* Indiana Code section 22–3–2–13 is designed to prevent double recovery. 847 N.E.2d at 170–71. Therefore, even if we assume for the sake of the argument that Mayes was entitled to compensation from the Second Injury Fund in spite of the third-party settlement, he still must prove that such compensation would not result in double recovery.

Here, Mayes's settlement with Federal Express remains "confidential" and is not included in the record. Appellant's Br. p. 5. Instead, the only information we have regarding the settlement is from the agreed statement of facts that Mayes and Main Tech submitted to the Board in 2003:

5. The parties in the third party case have reached a settlement of said case to which [Main Tech], Reliance and ·the Indiana Guaranty Fund have consented; as a condition of that settlement, [Main Tech] herein agrees that, after the settlement of the third party case:

a) [Main Tech] will continue to pay all statutory worker's compensation benefits pursuant to Indiana Worker's Compensation law;

b) [Main Tech] will procure [Mayes] suitable employment at its Indiana facility as long as [Main Tech] maintains its contract with Federal Express, namely, Fed Ex Phase V, when [Mayes's] injuries reach a state of permanence and quiescence;

c) The employment to which [Mayes] returns will account for lost seniority since November 12, 1999; and .

d) The employment procured by [Main Tech] will allow for overtime similar to other positions in [Mayes's] seniority class.

Appellant's App. p. 20–21.

Based on the limited information in the record, we cannot discern the amount of compensation Mayes obtained from the third-party settlement. Because it is his burden to prove that he is entitled to compensation from the Second Injury Fund and we cannot conclude that he has not already been compensated, Mayes has failed to carry his burden. In sum, even if we assume for the sake of the argument that Mayes was entitled to compensation from the Second Injury Fund in spite of the third-party settlement, he has failed to prove that further compensation would not result in double recovery. Therefore, we cannot conclude that the Board erred by denying his petition.

The judgment of the Board is affirmed.

BAILEY, J., and VAIDIK, J., concur.